GULF, C. & S. F. RY. CO. v. WALLER et al.
(No. 3259.)

(Court of Civil Appeals of Texas. Texarkana. Nov. 19, 1926. Rehearing Denied Nov. 25, 1926.)

1. Railroads ⬥108—Railroad held not to have violated statute requiring culverts (Vernon's Sayles' Ann. Civ. St. 1914, art. 6495).

Railroads held under facts not to have violated Vernon's Sayles' Ann. Civ. St. 1914, art. 6495, requiring it to construct necessary culverts or sluices as natural lay of plaintiff's land required for necessary drainage thereof.

2. Railroads ⬥114(4)—Whether railroad maintained sufficient culverts held for jury.

Whether railroad constructed and maintained culverts or sluices sufficient to carry off water that flowed to its right of way according to natural lay of land held, under facts, for jury.

3. Railroads ⬥108—Railroad's duty to provide culverts as "natural lay of land" required means at time roadbed was constructed (Vernon's Sayles' Ann. Civ. St. 1914, art. 6495).

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 6495, requiring railroad to provide necessary culverts as natural lay of land required for drainage, by "natural lay of land" is meant land as it was at time roadbed was constructed.

Appeal from District Court, Delta County; Newman Phillips, Judge.

Action by Harrison Waller and others against the Gulf, Colorado & Santa Fé Railway Company. From judgment for plaintiffs, defendant appeals. Affirmed.

Nora McDaniel and her husband, Tom McDaniel, and appellees Harrison Waller, L. P. Waller, Paul Waller, and Wyman Waller were the plaintiffs in the court below, and the appellant railway company was the defendant. The suit was for damages for the destruction of crops caused, the plaintiffs claimed, by surface water impounded in 1923 and 1924 on land they owned in Delta county by means of an embankment constituting the roadbed for appellant's line of railway across said land. The plaintiffs alleged that in constructing and maintaining said roadbed appellant did not comply with the law requiring it to provide "the necessary culverts or sluices, as the natural lay of the land requires, for the necessary drainage thereof." Article 6495, Vernon's Statutes. On special issues submitted to them the jury found the charge to be true, and that the failure of appellant to provide such culverts or sluices was a proximate cause of the destruction of the crops. The jury having found in response to other issues submitted to them that the value of the crops destroyed as charged was $1,800, after deducting the expense the plaintiffs would have incurred in cultivating, gathering, and marketing same, and having found, further, that plaintiffs were not guilty of contributory negligence in any of the respects charged against them by appellant, the court rendered judgment in appellees' favor for said sum.

Lee, Lomax & Wren, of Fort Worth, and Patteson & Patteson, of Cooper, for appellant.

Joel H. Berry and C. C. McKinney, both of Cooper, for appellees.

WILLSON, C. J. (after stating the facts as above). The north and south lines of appellees' tract of land (containing 120 acres) were 120 poles long, and the east and west lines thereof were 160 poles long. The embank-

ment constituting the roadbed of appellant's line of railway extended from a point on the east boundary line of the tract a short distance south from its northeast corner to a point on the west boundary line of the tract a short distance north from its southwest corner. About 55 acres of the tract were situated south of the embankment. The crops in question were on the 55 acres.

According to the lay of the land, surface water on the 55 acres and on land adjoining same flowed northward to the appellant railway company's right of way. The provision made by appellant for carrying off water so flowing and stopped by said embankment was an opening under a bridge forming a part of its roadbed near the northeast corner of the 55 acres.

It was undisputed in the testimony that in 1923 and 1924 the opening was not sufficient to carry off water flowing to it from the 55 acres and other lands situated south of said right of way. It also was undisputed in the testimony that in 1923 and 1924 crops on parts of the 55 acres were destroyed by surface water impounded thereupon because of the insufficiency of said opening to carry same off.

The disputed issues of fact were as to (1) whether such insufficiency of the opening was because water, which according to the "natural lay of the land" would not have flowed to the opening, was caused to flow thereto by artificial means, for which others than appellant were responsible; and (2) whether appellees were guilty of negligence in respects charged against them which deprived them in any event of a right to recover anything of appellant on account of such destruction of crops.

The issues of negligence on the part of appellees were determined in their favor by the findings of the jury. We think those findings had sufficient support in the testimony, and overrule the assignments in appellant's brief with reference to those issues.

[1] On the other issue of fact the jury found that appellant did not "construct and maintain during the year 1923 and 1924 sufficient ditches, sluices, and culverts along its right of way and under its roadbed to permit the flow of water from the plaintiffs' land as required by the natural lay of the land for its necessary drainage"; that the failure of appellant to construct sufficient ditches, etc., was the proximate cause of the destruction of appellees' crops; and that, after appellant constructed its roadbed on appellees' land, no water was "by artificial means, such as embankments or ditches, diverted from its natural flow, and thereby caused to flow to defendant's bridge which drains plaintiffs' land, which would not by its natural flow or lay of land have flowed under said bridge as the conditions existed at the time the roadbed was constructed."

The main contention presented in appellant's brief is that (under the statute applicable, to wit, article 6495, Vernon's Statutes) it was not bound, in constructing its roadbed, to provide culverts, etc., for carrying off surface water diverted thereto from its natural course by artificial means for which it was not responsible, and that it conclusively appeared from the testimony that such water was so diverted, and did not appear that the opening provided was not sufficient to carry off water which flowed thereto in 1923 and 1924 according to the "natural lay of the land." The statute referred to was as follows:

"In no case shall any railroad company construct a roadbed without first constructing the necessary culverts or sluices, as the natural lay of the land requires, for the necessary drainage thereof."

[2] We agree appellant did not violate the statute, and, if it was liable at all, it was by force of the common law, if it constructed and thereafter properly maintained culverts sufficient to carry off water that flowed to its right of way according to the natural lay of the land; but we do not agree it conclusively appeared from the testimony that it did that.

Appellant's line of railway was constructed along the north line of the 55 acres and the north line of land adjoining same on the east belonging to Bailey Moon. Water falling on the 55 acres, on land south of same, and on the Bailey Moon land, flowed north to appellant's right of way according to the natural lay of the land. The opening hereinbefore referred to provided by appellant to carry off water so flowing was under a bridge situated north of the Bailey Moon land, and east of and near to the northeast corner of the 55 acres. The land south of and adjoining the Bailey Moon land, and east of and adjoining the 55 acres, belonged to Zandy Moon. Between the 55 acres and the Bailey and Zandy Moon land a ditch had been cut in what a witness described as a "natural swag," extending from the south to a point on appellant's right of way a short distance west of the opening, and another ditch had been cut between the Bailey Moon land and that belonging to Zandy Moon, where, a witness testified, there had been a "little natural drain."

Appellant's contention that it conclusively appeared that water was diverted from its natural course to the opening in question seems to be based mainly on testimony that water on the Zandy Moon land was diverted west by means of the ditch last mentioned to the other ditch mentioned, and by the latter north to said opening. It may be that appellant's contention is a meritorious one so far as it is that it conclusively appeared that water on the Zandy Moon land was diverted west and then north to appellant's right of way by means of the ditches mentioned, but certainly it did not conclusively appear that,

had such water not been so diverted, it would have flowed to appellant's right of way and to said opening, and certainly it did not conclusively appear that the opening as maintained by appellant in 1923 and 1924 was sufficient to carry off the water that flowed thereto according to the natural lay of the land. The presumption was, we think, that all the water which flowed to the opening did so because of such natural lay of the land, and was not carried off in 1923 and 1924 because the opening as then maintained was not sufficient for the purpose. We think it devolved upon appellant to rebut such presumption by proof to the contrary, and that the jury had a right to say it had not done so.

[3] On the theory that there was testimony tending to show that, before it constructed its roadbed in 1888, surface water, which otherwise would not have done so, was so diverted by artificial means for which it was not responsible as to flow to the place where it provided the opening referred to, appellant requested the court to have the jury find whether such water was so diverted or not, and complains because its request was refused. Appellant insists that in constructing its line of railway it was bound by the terms of the statute to provide means for carrying off only such surface water impounded by its roadbed as flowed thereto according to the natural lay of the land, and was not bound to provide means for carrying off any other water so impounded. We think the lawmakers meant, by the words "natural lay of the land," the land as it was at the time the railway company constructed its roadbed, and not the land as it was one or a hundred or more years before that time. Cook v. North Bergen, 72 N. J. Law, 119, 59 A. 1035; 29 Cyc. 280.

Contentions not disposed of by what has been said are overruled.

The judgment is affirmed.